ORDERED.

Dated: December 05, 2022

*Roberta A. Colton*
Roberta A. Colton
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

Julie Warren,                                    Case No. 8:21-bk-01223-RCT
                                                 Chapter 13
        Debtor(s).
_____/

Richard Kevin Warren,                            Adv. No. 8:21-ap-00229-RCT

        Plaintiff,
v.

Julie Warren,

        Defendant.
_____/

**MEMORANDUM DECISION AND ORDER
<u>GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

Before the Court is Plaintiff Richard Kevin Warren's ("Plaintiff") Verified Motion for Summary Judgment and Motion for Determination that Collateral Estoppel Applies (Doc. 10) (the "Motion"), and Defendant-Debtor Julie Warren's ("Debtor") response in opposition to the Motion (Doc. 15) (the "Response"). Also part of the summary judgment record are (i) the affidavits of Liesl A. Weeks, Esq. and Stacey Gambel (Docs. 11 & 12, respectively), (ii) a copy of a state court order dated March 29, 2022, determining Plaintiff's entitlement to

attorney's fees in the parties' marriage dissolution action (Doc. 18) (the "Attorney's Fees Order"), and (iii) a partial transcript of a March 10, 2022 hearing before the state court from which the Attorney's Fees Order issued (Doc. 19), all of which were filed by Plaintiff in support of his Motion.  To the extent necessary, the Court has taken judicial notice of the parties' filings in the underlying Chapter 13 bankruptcy case.

Plaintiff seeks a determination that a debt arising from an Amended Final Judgment of Dissolution of Marriage dated June 9, 2020 (the "Divorce Judgment"),[1] more specifically an award for equitable distribution in favor of Plaintiff based upon Debtor's dissipation of marital assets, is non-dischargeable under either 11 U.S.C. §§ 523(a)(2)(A) or (a)(4).[2] Plaintiff's Motion is based solely on the application of the doctrine of collateral estoppel.

After a preliminary hearing at which the Court heard argument on the Motion, the Court took the matter under advisement.  Upon review of the Motion and the Response, together with the summary judgment record, and for the reasons that follow, the Court finds that the Motion should be granted and the debt declared non-dischargeable.

**Background**

Plaintiff and Debtor were married in December 1996.  They separated in early January 2015, and a few months later, Debtor filed for divorce claiming the marriage was irretrievably broken.[3] Plaintiff cross-petitioned for divorce claiming the same and as relevant here, asked the state court in making its determination on equitable distribution to "tak[e] into account and carefully consider[] the manipulative actions and illegal conduct of the [Debtor] during the marriage and the pendency of this case."[4]

---

[1] Motion Ex. A; Response Ex. A.
[2] Statutory references are to 11 U.S.C. §§ 101–1532 ("Code" or "Bankruptcy Code"), unless stated otherwise.
[3] Response Ex. B.
[4] Resp. Ex. C ¶ 9; *see also id.* ¶¶ 11 & 21.

As noted by the state court, the dissolution proceeding was prolonged, lasting nearly five years due to the pendency of a criminal case against Debtor.[5] The criminal case resulted in Debtor's adjudication of guilt for three felonies: grand theft, forgery, and uttering a forgery.[6] As described by the state court, Debtor's convictions were based upon Debtor's "manipulating" the finances of Engineered Energy Equipment ("EEE"), Plaintiff's former business,[7] and "failing to pay 941 taxes" during the period from 2012 until the parties' separation in January 2015.[8]

The Divorce Judgment was entered following a two-day, non-jury trial and after the state court heard additional argument. Debtor was self-represented at the trial; however, that was the product of Debtor's own choosing. At the final pretrial conference at which her counsel was allowed to withdraw, Debtor informed the state court that she was prepared to proceed without counsel at the trial that was then only a week away.[9]

In the Divorce Judgment, the state court ordered that as part of equitable distribution Debtor must pay Plaintiff the sum of $117,426, plus interest at the statutory rate, "as a result of her dissipation of marital assets" (the "Equitable Distribution Debt").[10] The state court reserved ruling on Plaintiff's entitlement to attorney's fees and costs.

Approximately six months after the judgment's entry, Plaintiff filed his motion for attorney's fees and costs. Within a matter of weeks, Plaintiff also filed a motion for contempt and enforcement of the Divorce Judgment for Debtor's failure to make payments toward the Equitable Distribution Debt. Before the state court could adjudicate the Plaintiff's motions,

---

[5] *See* Attorney's Fees Order ¶ 9(e).
[6] Mot. Ex. D.
[7] Plaintiff was CEO and co-owner of EEE. As a result of Debtor's illegal conduct, Plaintiff was required to resign his position and relinquish his shares.
[8] Divorce Judgment ¶¶ 5(j) & 6(A)(e).
[9] Divorce Judgment Preamble & ¶ 3; *see also* Doc. 11 (Aff. of Liesl A. Weeks ¶¶ 2–9).

Debtor commenced the Chapter 13 case underlying this proceeding.[11]

After obtaining relief from the automatic stay,[12] the parties returned to state court for that court to liquidate Plaintiff's claim for attorney's fees and costs, which are asserted as part of his claim in Debtor's bankruptcy.[13] Following a hearing at which Debtor was represented by her bankruptcy counsel, the state court entered the Attorney's Fee Order. The state court ordered Debtor to pay Plaintiff $23,172.15, one-half of the attorney's fees and cost Plaintiff had incurred during the lengthy dissolution proceeding. By agreed order on Debtor's objection to Plaintiff's claim, Plaintiff's claim was allowed in the amount of $145,009.99. This amount includes the Equitable Distribution Debt, prepetition interest on that debt, and the attorney's fees and costs ordered in the Attorney's Fee Order.[14]

Due to the nature of Plaintiff's argument and for completeness, the Court sets forth the relevant portions of the Divorce Judgment and Attorney's Fee Order below.

*Divorce Judgment*

Regarding alimony and the relevant factors set forth in Fla. Stat. § 61.08, the state court found, in part, as follows:

> [5.](a)  The Parties standard of living established during the marriage.
>
> The Parties enjoyed a very pleasant standard lifestyle until October 31, 2014 when Wife's manipulation of EEE's finances was exposed. . . . [T]here were months when Wife would max out the credit card limit of $5,000 leaving Husband stranded at hotels until monies could be transferred. The parties lived beyond their means. The court finds [that] Wife engaged in unfettered spending to the detriment of herself and her family.
>
> . . .

---

[10] Divorce Judgment ¶ 6(H) & Decree E(2). The state court ordered that Debtor would pay the debt by making monthly payments of $650.00 until the debt, with accrued interest, was paid in full.
[11] Attorney's Fees Order ¶¶ 2–6.
[12] Case No. 8:21-bk-01223-RCT (hereafter, "Main Case"), Doc. 30.
[13] Main Case Claim No. 9-1.
[14] Main Case Doc. 52.

(d)    The financial resources of each party, including the nonmarital and the marital assets and liability distributed to each.

As far as the Court can determine, there are more liabilities than there are assets, as the Wife dissipated or otherwise disposed of the majority of the Parties' assets . . . .

. . .

(j)    Any other factor necessary to do equity and justice between the parties.

Since 2012, the Wife has been involved in an extramarital affair with her paramour . . . [and] has lived in a supportive relationship with her paramour since the Parties' separation.

Additionally, Wife was adjudicated guilty of grand theft (F2); forgery (F3); and uttering a forgery (F3), for manipulating EEE's finances and failing to pay 941 taxes. This resulted in Husband in December 2014 prior to the parties' separation resigning his position of CEO of EEE, relinquish[ing] his shares in EEE and incurring a debt of $120,000 to EEE for Wife's criminal actions. Thus, there is competent, substantial evidence that Wife engaged in a systemic pattern of deceit and fraud which has harmed the husband.

Further, Wife went to elaborate lengths in her deceitful behavior going so far as to make a false police report in Alabama to hide her misappropriation of marital funds from the Husband . . . .

Stacey Gamb[el], MBA, CPA, CFF, CVA, testified that Wife expended from $173,520 to $234,851 of marital funds for non-marital purposes. Indeed, Wife and her paramour traveled extensively which accounted for a significant portion of those funds.

Taking these factors in the totality of the circumstances, the Court finds that Wife has engaged in misappropriat[ion] of the parties' assets causing the parties to incur significant debt which Wife has not contributed to paying such debts requiring Husband to pay those debts. Therefore, Husband does not have the ability to pay alimony. Alimony is terminated . . . .

After considering the relevant factors set forth in Fla. Stat. § 61.075, the state court concluded that as to equitable distribution, there was "justification" for an unequal distribution in favor of Plaintiff. The court found, in part, as follows:

> [6. A.](e).   The contribution of one spouse to the personal career or educational opportunity of the other spouse.
>
> Both spouses worked together; however, from 2012 until the parties' separation . . . , Wife engaged in criminal behavior resulting in adjudication [of guilt] as to Grand Theft of [$20,000] or more . . . ; Forgery . . . ; and Uttering a Forgery. . . and restitution of $40,000 to EEE.  Further, Wife's behavior resulted in IRS debts for failure to pay 941 taxes and Husband's having to relinquish his shares in [EEE] such that "EEE" had no value.
>
> . . .
>
> (g).    The contribution of each spouse to the acquisition, enhancement, and production of income or the improvement of, or the incurring of liabilities to, both the marital assets and the nonmarital assets of the parties.
>
> There was competent substantial evidence that Wife's behavior resulted in the parties incurring significant debt and that she dissipated $173,520 to $234,851 in marital assets.  The Court attributes $234,851 as to marital funds dissipated during the marriage.
>
> . . .
>
> (i).    The intentional dissipation, waste, depletion, or destruction of marital assets after the filing of the petition or within 2 years prior to the filing of the petition.
>
> There was competent substantial evidence that Wife engaged in depletion and destruction of marital assets prior to and after filing the petition for dissolution of marriage.  Ms. Gamb[el], the Husband's forensic accountant expert testified that the Wife was responsible for the dissipation of $234,851 in marital assets.
>
> This testimony was unrebutted.

(j).    Any other factors necessary to do equity and justice between the parties.

The Court considers Wife's intentional depletion of marital assets, systematic pattern of deceit resulting in Husband having to sign over his shared in "EEE" and the parties incurring significant IRS [] liens on the real property.

. . .

*Attorney's Fees Order*

In support of its order, the state court made the following relevant findings of fact:

9.    This Court is well aware of what happened during the dissolution of marriage case and noted the following:

    a.    The sum of $234,851 was attributed to the Former Wife as to marital funds she dissipated during the marriage for non-marital purposes.

. . .

    c.    There was the Former Wife's criminal case which prolonged this case in wherein she pled to three (3) felonies: grand theft (F2); forgery (F3); and uttering forgery (F3) for manipulating company finances and failing to pay 941 taxes.

. . .

    f.    The Former Wife went so far as to call the police in Alabama and report a burglary to hide her activities from the Former Husband, and she created a situation that looked like a burglary, and then admitted that there was no burglary.

. . .

11.    The Court does not find the Former Wife credible today and did not find her credible at the time of the Final Hearing.

**Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[15] The moving party bears the initial burden of showing the absence of a triable issue of fact and its entitlement to judgment as a matter of law. If the moving party satisfies its burden, the burden then shifts and the non-moving party must set forth specific facts to show that there is a genuine issue for trial.[16] "If there is a conflict between the parties' allegations or evidence, . . . all reasonable inferences must be drawn in the nonmoving party's favor."[17]

**Discussion**

This is a proceeding to determine that the Equitable Distribution Debt owed by Debtor to Plaintiff is non-dischargeable. Whether a debt is non-dischargeable is a matter of federal law governed by the Bankruptcy Code.[18] A party seeking a declaration that its debt should be excepted from a debtor's discharge must establish non-dischargeability by a preponderance of the evidence. But "[i]ntertwined with this burden is the basic principle of bankruptcy that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start."[19]

Arguing that collateral estoppel applies based upon, *inter alia*, the Divorce Judgment, Plaintiff asks that the Court find that the Equitable Distribution Debt is non-dischargeable under either § 523(a)(2)(A) ("false pretenses") or § 523(a)(4) ("embezzlement"). Certainly,

---

[15] Fed. R. Civ. P. 56(a) made applicable here by Fed. R. Bankr. P. 7056.
[16] *See, e.g.*, *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300–01 (11th Cir. 2012).
[17] *Koehler v. Waypoint Res. Grp, LLC*, No. 8:18-cv-2017-T-60AAS, 2019 WL 5722117, at *1 (M.D. Fla. Nov. 5, 2019) (citing *Shotz v. City of Plantation, Fla.* 344 F.3d 1161, 1164 (11th Cir. 2003)).
[18] *Harris v. Jayo (In re Harris)*, 3 F.4th 1339, 1345 (11th Cir. 2021) (quoting *Grogan v. Garner*, 498 U.S. 279, 284 (1991)).
[19] *Id.* (quoting *Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997)).

collateral estoppel may apply to establish the non-dischargeability of a creditor's claim.[20] Simply put, "[c]ollateral estoppel prevents the relitigation of issues already litigated and determined by a valid and final judgment in another court."[21] A court may apply collateral estoppel "to reach conclusions about certain facts, foreclose relitigation of those facts, and then consider those facts as 'evidence of nondischargeability.'"[22]

When a state court judgment is offered to estop a debtor from denying non-dischargeability, "the collateral estoppel law of that state must be applied."[23] Here, that state is Florida. "Under Florida law, collateral estoppel applies when: (1) the issue to be decided by the Court is identical to the issue decided in the state court litigation, (2) the issue was actually litigated in the state court litigation, (3) the prior determination of the issue was a critical and necessary part of the state court judgment, and (4) the standard of proof in the state court litigation was at least as high as it is in this proceeding."[24] Only the first two elements are disputed here.

Preliminarily, the Court addresses the criminal Complaint Affidavit and Order of Probation from which Plaintiff also seeks to invoke collateral estoppel.[25] The Court removes from its consideration the criminal Complaint Affidavit. The Complaint Affidavit appears to be the charging instrument in Debtor's criminal case;[26] it is not a judgment of the criminal court. And importantly, it contains numerous factual allegations asserted in support of

---

[20] *Id.* at 1344; *see also St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 675–76 (11th Cir. 1993).
[21] *HSSM #7 Ltd. P'ship v. Bilzerian (In re Bilzerian)*, 100 F.3d 886, 892 (11th Cir. 1996).
[22] *Fed. Trade Comm'n v. Rensin (In re Rensin)*, 597 B.R. 177, 182 n.2 (Bankr. S.D. Fla. 2018) (quoting *Thomas v. Loveless (In re Thomas)*, 288 F. App'x 547, 548 (11th Cir. 2008)).
[23] *St. Laurent*, 991 F.2d at 676; *see, e.g.*, *Harris*, 3 F.4th at 1344.
[24] *Benz Research & Dev. Corp. v. Ebrahimpour (In re Ebrahimpour)*, 630 B.R. 643, 648 (Bankr. M.D. Fla. 2021); *see, e.g.*, *St. Laurent*, 991 F.2d at 676. *But see Harris*, 3 F.4th at 1345–46 (noting a split among Florida bankruptcy courts on whether the "critical and necessary" prong is actually required but declining to reach the question as other elements of collateral estoppel were not satisfied).
[25] Mot. Exs. C & D.
[26] *See* Fla. R. Crim. P. 3.140.

criminal charges for which Debtor was not adjudicated guilty.[27] As for the Order of Probation, the Court considers the order, but only to the limited extent discussed below.

The Court agrees with Debtor that under Federal Rule of Evidence 410, her plea of no contest to the criminal charges is not admissible.[28] But that rule does not extend to the admission of the criminal convictions that arose from such plea.[29] Nonetheless, it is not entirely clear from the Order of Probation the facts supporting the specific crimes for which Debtor was convicted. The order does not contain any factual recitation underlying the crimes for which Debtor was found guilty nor does it incorporate matters from the Complaint Affidavit. Rather, the charges are identified simply by count and the name of the offense. When there is "difficulty in determining whether there is an identity of issues between state court actions and subsequent dischargeability actions, '[a]ny reasonable doubt as to what was decided by a prior judgment . . . should be resolved against using it as an estoppel.'"[30]

As such, regarding the criminal Complaint Affidavit and Order of Probation, critical elements of collateral estoppel are either unable to be determined or plainly absent. And, of course, the Equitable Distribution Debt does not arise from the criminal case in the first instance.[31] The Court therefore will focus its discussion on the factual findings and decision

---

[27] For that matter, it makes no reference to any marital assets of Plaintiff and Debtor. Rather, the only funds alleged to have been misappropriated, or attempted to be, are funds belonging to EEE.
[28] Fed. R. Evid. 410(a)(2).
[29] *See* Fed. R. Evid. 609(a).
[30] *Harris*, 3 F.4th at 1346 (quoting *Sarasota CCM, Inc. v. Kuncman (In re Kuncman)*, 454 B.R. 276, 284 (Bankr. E.D. N.Y. 2011)).
[31] Reviewing the Complaint Affidavit and Order of Probation together, it appears that Debtor's three convictions arose from conduct arising out of her unsuccessful attempt to obtain a loan for EEE from Waste Funding using a forged application. Debtor was convicted of counts 3, 9, and 11, all which stem from the attempt to obtain the loan. There is, as far as the Court can tell, no factual overlap or causal connection between Debtor's convictions and her dissipation of martial assets. Further, it appears that while the state court considered Debtor's crimes, it did so largely in support of its conclusion that Debtor had engaged is a "systematic pattern of deceit" that caused financial harm to Plaintiff, a pattern this Court observes went beyond her criminal activities.

of the state court as reflected in the Divorce Judgment and Attorney's Fees Order.[32]

With that preliminary matter aside, the Court turns to the contention that Debtor's misconduct, be that "a pattern of deceit" or "fraud," was not "actually litigated" in the divorce proceeding. Debtor's argument on this point is brief and somewhat confused with her argument regarding the identity of the issues, which is not surprising as it has been observed that "the 'identical issue' requirement and the '[actually] determined' requirement overlap."[33] Nonetheless, Debtor's argument is not persuasive.

Plaintiff's initial pleadings in the dissolution proceeding clearly put the issue of Debtor's misconduct before the state court, not to mention specifically regarding equitable distribution. The divorce proceeding was delayed to allow Debtor to address her misdeeds in the criminal case before she might have been forced to litigate those issues in the civil proceeding and potentially suffer prejudice by having such issues decided. And among other witnesses, the state court received testimony from an expert, Ms. Gambel, specifically on the issue of dissipation of marital assets.

Debtor was represented in the divorce proceeding through and including the final pretrial conference; no suggestion has been made that the representation was inadequate. Rather, Debtor's procedural arguments focus on the fact that Debtor was self-represented at the two-day trial. But that was a result of her own choosing.

Upon review of the record, the Court easily concludes that the relevant issues were "actually litigated" in the state court. Thus, only one element of collateral estoppel remains: whether the issues to be decided by this Court are identical to those decided by the state court.

---

[32] The Attorney's Fee Order largely reinforces, or repeats, the state court's factual findings in the Divorce Judgment rather than set forth new facts in further support of the Equitable Distribution Debt. For sake of brevity, the Court, going forward, refers solely to the Divorce Judgment.
[33] *Harris*, 3 F.4th at 1327.

<u>Dischargeability under § 523(a)(2)(A)</u>

Plaintiff first asserts that the Equitable Distribution Debt is not dischargeable under § 523(a)(2)(A), which excludes from discharge debts obtained through "false pretenses, a false representation, or actual fraud." The purpose of § 523(a)(2)(A) is to except from discharge those debts arising from a debtor's conduct perpetrated with the intent to defraud whether "implemented by a misrepresentation or by some other improper means."[34]

Section 523(a)(2)(A) is generally understood to require "the traditional elements of common law fraud."[35] To prove fraud, a plaintiff must establish the following elements: (i) debtor made a false representation with the intent to deceive plaintiff; (ii) plaintiff relied on the misrepresentation; (iii) plaintiff's reliance was justified; and (iv) plaintiff sustained a loss because of debtor's misrepresentation.[36]

Plaintiff argues that the Equitable Distribution Debt was obtained by Debtor by "false pretenses." "[T]he Eleventh Circuit [has] explained that the concept of false pretenses under § 523(a)(2)(A) is especially broad and includes intentional fraud or deceit practiced by whatever method and in whatever manner."[37] The Eleventh Circuit said:

> False pretenses may be implied from conduct or may consist of concealment or non-disclosure where there is a duty to speak, and may consist of any acts, work, symbol, or token calculated and intended to deceive. . . . It is a series of events, activities or communications which, when considered collectively, create a false and misleading set of circumstances, or a false and misleading understanding of a transaction, by which a creditor is wrongfully induced by a debtor to transfer property or extend credit to the debtor. . . . Silence or concealment as to a material fact can constitute false pretenses.[38]

---

[34] *McClellan v. Cantrell*, 217 F.3d 890, 894 (7th Cir. 2000).
[35] *SEC v. Bilzerian (In re Bilzerian)*, 153 F.3d 1278, 1281 (11th Cir. 1998); *see, e.g.*, *Taylor v. Wood (In re Wood)*, 245 F. App'x 916, 917–18 (11th Cir. 2007); *In re Rensin*, 597 B.R. at 184.
[36] *See, e.g.*, *In re Wood*, 245 F. App'x at 917–18; *In re Rensin*, 597 B.R. at 184–85.
[37] *Evans Truck Sales, Inc. v. Lucky (In re Lucky)*, No. 07-81938-JAC-13, Adv. No. 07-80112-JAC-13, 2008 WL 2952202, at *4 (Bankr. N.D. Ala. July 29, 2008).
[38] *In re Wood*, 245 F. App'x at 918 (quoting *FCC Nat'l Bank v. Gilmore (In re Gilmore)*, 221 B.R. 864, 872 (Bankr. N.D. Ala. 1998)).

"As distinguished from false representation, which is an express misrepresentation[,] false pretense involves an implied misrepresentation or conduct intended to create and foster a false impression[.]"[39] Thus, where a debtor through her conduct creates a false impression and in so doing, intends another to rely upon that false impression to the other's detriment, debtor's conduct is actionable under § 523(a)(2)(A).[40]

Here, the Divorce Judgment is replete with the state court's findings that Debtor knowingly and intentionally misappropriated or dissipated marital assets while also failing to contribute toward significant debts incurred by the parties during the marriage as the result of her misconduct. Importantly, the state court found that based upon "competent substantial evidence," Debtor's conduct constituted a "systemic pattern of deceit and fraud which has harmed the husband." The state court cited as an example that Debtor conjured up and reported a false burglary to police in Alabama to conceal her activities from the Plaintiff. Based upon the state court's findings, all elements necessary to establish Plaintiff's "false pretenses" claim under § 523(a)(2)(A) are satisfied.[41]

In response, Debtor first argues that Plaintiff fails to identify any false statement made by her upon which he justifiably relied. Such argument is unpersuasive. Any requirement of an express "false representation" for exception from discharge under § 523(a)(2)(A) has been conclusively rejected by the Supreme Court.[42] And "reliance is relevant only when a fraud

---

[39] *SunTrust Bank v. Brandon (In re Brandon)*, 297 B.R. 308, 313 (Bankr. S.D. Ga. 2002) (quoting *Minority Equity Capital Corp. v. Weinstein (In re Weinstein)*, 31 B.R. 804, 809 (Bankr. E.D. N.Y. 1983)); *see also Ostertag v. Overall (In re Overall)*, 248 B.R. 146, 150 (Bankr. W.D. Mo. 2000).

[40] *See In re Brandon*, 297 B.R. at 313–16; *see also In re Wood*, 245 F. App'x at 918; *In re Rensin*, 597 B.R. at 185–86.

[41] *See FCC Nat'l Bank v. Gilmore (In re Gilmore)*, 221 B.R. 864, 872 (Bankr. N.D. Ala. 1998) ("Silence or concealment as to a material fact can constitute false pretenses." (citing *Bank of Miami v. Quintana (In re Quintana)*, 4 B.R. 508, 510 (Bankr. S.D. Fla. 1980))); *see also In re Wood*, 245 F. App'x at 918.

[42] *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 356, 360–62, 136 S. Ct. 1581, 1586–88 (2016); *see McClellan*, 217 F.3d at 893 ("[S]ection 523(a)(2)(A) is not limited to 'fraudulent misrepresentation.'").

takes the form of a [express] misrepresentation."[43] But more importantly, Plaintiff does not rely on a false representation to establish his non-dischargeability claim; rather, Plaintiff argues "false pretenses." Debtor also suggests that Plaintiff is improperly attempting to use the Debtor's actions "in a sweeping manner," but Debtor misunderstands that is precisely what Plaintiff must show to establish a "false pretenses" claim, *i.e.*, "*a series of events, activities or communications which, when considered collectively, create a false and misleading set of circumstances* . . . ."[44]

Debtor's remaining arguments narrowly focus on the state court's use of the term "fraud." Debtor observes that the state court did not find she committed "fraud," noting that the term is used only once and then in a section of the decision that deals with alimony not equitable distribution. But "fraud" is term that oft defies clear definition,[45] and for collateral estoppel to apply, the state court did not necessarily need to find Debtor liable for fraud.[46]

The Court agrees that an isolated use of the term "fraud" would not be dispositive of non-dischargeability, but that is not the entirety of what the state court said in this case. After trial and based upon "substantial" evidence, the state court found that Debtor misappropriated marital funds for her own purposes, namely, to fund her extramarital affair, and in so doing engaged in a pattern of deceitful conduct to hide her expenditures and her affair from Plaintiff, all resulting in damage to Plaintiff. Thus, again, all elements of a "false pretenses" claim are present and are satisfied.

---

[43] *McClellan*, 217 F.3d at 894.
[44] *In re Wood*, 245 F. App'x at 918 (emphasis added).
[45] *See McClellan*, 217 F.3d at 893 (quoting *Stapleton v. Holt*, 250 P.2d 451, 453–54 (Okla. 1952)):
> Fraud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth. No definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated.

Debtor also argues, without citing any specific authority, that the state court did not have the necessary jurisdiction to decide issues of fraud. The decision was issued by the circuit civil court, which is the superior court of general jurisdiction in Florida.[47] But truly, the Court need go no further that the domestic relations statute itself to reject D's argument. Section 61.075 of the Florida Statutes sets forth a non-exhaustive list of factors that the state court is to consider in determining equitable distribution, including "[t]he intentional dissipation, waste, depletion, or destruction of marital assets after the filing of the petition or within 2 years prior to the filing of the petition" and "[a]ny other factors necessary to do equity and justice between the parties."[48] The state court in rendering the Divorce Judgment did exactly what the statute requires. While the statute does not use the term "fraud," as noted above, such a specific invocation of the term is not required.

For that matter, in Florida, it is considered a significant departure from the norm to include dissipated marital assets in the equitable distribution scheme as the state court did in the Divorce Judgment. To do so, "the evidence must establish that a party engaged in *intentional misconduct* that resulted in the dissipation of the marital asset[]"[49] and that intentional misconduct must rise above the level of "mismanagement or simple squandering of marital assets in a manner of which the other spouse disapproves."[50] The state court must find that the "spending spouse" (here, Debtor) used marital funds "for his or her own benefit and for a purpose unrelated to the marriage at a time when the marriage is undergoing an

---

[46] *Cf. Thomas v. Loveless (In re Thomas)*, 288 F. App'x 547, 548 (11th Cir. 2008) (quoting *Halpern v. First Georgia Bank (In re Halpern)*, 810 F.2d 1061, 1064 (11th Cir. 1987)).
[47] *See* Fla. Stat. § 26.012; *see also Golub v. Golub*, 325 So. 3d 164, 171 (Fla. Dist. Ct. App. 2021).
[48] Fla. Stat. § 61.075(1)(i), (j).
[49] *Roth v. Roth*, 312 So. 3d 1021, 1026 (Fla. Dist. Ct. App. 2021) (emphasis added); *see, e.g.*, *Van Maerssen v. Gerdts*, 295 So. 3d 819, 824–25 (Fla. Dist. Ct. App. 2020).
[50] *Van Maerssen*, 295 So. 3d at 824 (quoting *Roth v. Roth*, 973 So.2d 580, 585 (Fla. Dist. Ct. App. 2008)).

irreconcilable breakdown."[51] Suffice it to say, for a state court to depart from the general rule is a serious matter that requires specific factual findings—including that the offending spouse acted both wrongfully and intentionally—that squarely fall within the definition of "false pretenses" as articulated by the Eleventh Circuit.[52] Here, the state court made these findings and Debtor took no appeal.

In short, all elements of collateral estoppel having been established, Debtor is estopped from disputing those findings in this Court. Accordingly, the Court finds that Plaintiff has demonstrated his entitlement to summary judgment that the Equitable Distribution Debt is not dischargeable under § 523(a)(2)(A).[53]

Dischargeability under § 523(a)(4)

Plaintiff asserts, both additionally and alternatively, that the Equitable Distribution Debt is not dischargeable under § 523(a)(4) as a debt arising from "embezzlement." "Embezzlement is the 'fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come.'"[54] To prove a claim under § 523(a)(4) for embezzlement, a plaintiff must show: "(1) that 'a debtor appropriated

---

[51] *Id.*
[52] *See, e.g.*, *In re Lucky*, 2008 WL 2952202, at *4.
[53] Though not the focus of Plaintiff's argument, the Equitable Distribution Debt would also be non-dischargeable under § 523(a)(2)(A) due to "actual fraud." The Supreme Court has advised that "actual fraud" means "any fraud that involves moral turpitude or intentional wrong" which is "done with wrongful intent." *Husky*, 578 U.S. at 360, 136 S. Ct. at 1586 (internal quotation omitted); *see also BMO Harris Bank, N.A. v. Richert (In re Richert)*, 632 B.R. 877, 894 (Bankr. M.D. Fla. 2021) (quoting *FTC v. Juravin (In re Juravin)*, 623 B.R. 343, 346 (Bankr. M.D. Fla. 2020)):

> Actual fraud precluding discharge "consists of any deceit, artifice, trick, or design involving [the] direct and active operation of the mind, used to circumvent and cheat another—something said, done or omitted with the design or perpetrating what is known to be a cheat or deception."

Debtor's misconduct as determined by the state court would fall within this category.
[54] *Enter. Maint. & Contracting, Inc. v. Tadlock (In re Tadlock)*, No. 3:12-cv-828-J-34, 2014 WL 5080906, at *6 (M.D. Fla. Sept. 30, 2014) (quoting *In re Weber*, 892 F.2d 534, 538 (7th Cir. 1989)); *see, e.g.*, *Fla. Outdoor Equip. v. Tomlinson (In re Tomlinson)*, 220 B.R. 134, 136 (Bankr. M.D. Fla. 1998).

funds to his or her benefit,' and (2) 'that the debtor did so with fraudulent intent or deceit.'"[55]

Plaintiff, citing *Jerry Katzman, M.D. Ophthalmic Associates, P.A. v. Owens (In re Owens)*,[56] relies heavily on the Criminal Affidavit and Debtor's no contest plea and criminal conviction for grand theft and forgery as reflected by the Order of Probation to establish his embezzlement claim. But as indicated above, the Court does not consider those matters. Further, *In re Owens* is distinguishable not only as the debtor in that case plead guilty, rather than no contest, to the criminal charges but also and more importantly, the plaintiff before the bankruptcy court was a business and indisputably the victim of the debtor's crimes which gave rise to its civil claims that resulted in the debt for which dischargeability was at issue.[57]

Beyond the criminal matter, Plaintiff also relies on the state court's finding in the Divorce Judgment. There can be little doubt that the state court determined that Debtor's dissipation of marital assets was for her own benefit, specifically to finance her extramarital affair, and to the detriment of Plaintiff. Further, the state court specifically found that Debtor dissipated the marital assets intentionally and as part of "systematic pattern of deceit." Based upon the state court's findings, all elements necessary to establish Plaintiff's "embezzlement" claim under § 523(a)(4) are satisfied.

Debtor's arguments in response largely are either directed to matters involving the criminal case or otherwise misunderstand the narrow focus of Plaintiff's claim, *i.e.*, "solely . . . embezzlement."[58] Only one argument falls outside those two categories, namely that the state court lacked appropriate jurisdiction to determine "embezzlement."

---

[55] *In re Tadlock*, 2014 WL 5080906, at *6 (quoting *SmithKline Beecham Corp. v. Lam (In re Lam)*, No. 06–68805–MGD, 2008 WL 7842072, at *3 (Bankr. N.D. Ga. Mar. 27, 2008)).
[56] 123 B.R. 434 (Bankr. M.D. Fla. 1991).
[57] *Id.*
[58] Motion p.21.

For the same reasons discussed above, the Court rejects Debtor's jurisdictional argument. To state the obvious, the state court did not find that Debtor had "embezzled" funds from Plaintiff. Rather, it determined that Debtor had appropriated and dissipated marital assets for her own benefit and did so intentionally as part of "systematic pattern of deceit." Such a determination falls squarely within its mandate under Fla. Stat. § 61.075.

A bankruptcy court may apply collateral estoppel to bar relitigation of facts determined by a state court and "then consider those [adjudicated] facts as evidence of nondischargeability."[59] Both elements of a § 523(a)(4) embezzlement claim are clearly present in the Divorce Judgment. All the elements of collateral estoppel having been established, Debtor is estopped from disputing those findings in this Court.

Therefore, the Court finds that Plaintiff has demonstrated his entitlement to summary judgment that the Equitable Distribution Debt is not dischargeable under § 523(a)(4).

For these reasons, it is **ORDERED** that the Motion (Doc. 10) is **GRANTED**. The Court will enter a separate judgment of non-dischargeability in favor of Plaintiff.

Service of this Order other than by CM/ECF is not required. Local Rule 9013-3(b).

---

[59] *Thomas*, 288 F. App'x at 548 (internal quotation omitted).